# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 9, 2010

No. 09-40806
Summary Calendar

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LARRY JOHNSON,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:08-CR-1906

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant–appellant Larry Johnson appeals the sentence imposed following his guilty plea to two counts of transporting an undocumented alien for financial gain. On appeal, Johnson argues that the district court erred in applying the reckless endangerment enhancement pursuant to § 2L1.1(b)(6) of the United States Sentencing Guidelines. For the following reasons, we AFFIRM Johnson's sentence.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40806

## BACKGROUND

On October 28, 2008, Johnson drove a tractor trailer to the Interstate 35 Border Patrol checkpoint near Laredo, Texas. At the checkpoint, a border patrol dog alerted to the presence of contraband or persons inside the tractor trailer, and Johnson's vehicle was referred to secondary inspection. At the secondary inspection point, Johnson admitted that there were five people inside the tractor; further inspection revealed seven undocumented aliens inside the sleeper compartment of the tractor.

Johnson was indicted in November 2008 for aiding and abetting the transportation of two undocumented aliens for commercial advantage and private gain by means of a motor vehicle in violation of 8 U.S.C. § 1324 and 18 U.S.C. § 2. On January 14, 2009, Johnson pleaded guilty to the indictment, and the district court accepted Johnson's guilty plea the next day. The probation department calculated Johnson's base offense level at twelve under § 2L1.1(a)(3) of the United States Sentencing Guidelines (U.S.S.G.). Three levels were added, pursuant to U.S.S.G. § 2L1.1(b)(2)(a), because Johnson transported seven aliens, and an increase to level eighteen was recommended, under § 2L1.1(b)(6), for "intentionally or recklessly creating a substantial risk of death or serious bodily injury." After a two-level reduction for acceptance of responsibility, the probation department recommended a total offense level of sixteen. After assessing one criminal history point, the probation department calculated a punishment range of 21–27 months.

At sentencing, Johnson objected to the application of the reckless endangerment enhancement. On August 6, 2009, the district court held a hearing, considering testimony of the border patrol agent who took photographs of the aliens and photographs of the aliens inside the tractor. The border patrol agent testified that he was not present when the aliens were discovered; however, he stated that it was "standard procedure" to keep the aliens positioned

2

No. 09-40806

as they were found until the photographer could document the situation. Of the photographs taken, one photograph shows several aliens lying on the floor of the tractor, and another photograph shows an alien sitting on the floor partly inside a compartment that is intended for a small refrigerator. The district court found that the photographs accurately depicted the position of the aliens inside the tractor when discovered by the border patrol; that the aliens were wedged into the back of tractor; and that one alien was "wedged inside" the small compartment. The court then overruled Johnson's objection to the reckless endangerment enhancement and sentenced Johnson to concurrent 21-month terms of imprisonment and three years of supervised release. The court stated that it would have imposed a lesser sentence but for the reckless endangerment enhancement. Johnson appealed.

## DISCUSSION

"We review a district court's interpretation of the [sentencing] guidelines *de novo* and its factual determinations for clear error." *United States v. Solis–Garcia*, 420 F.3d 511, 514 (5th Cir. 2005). A factual finding is not clearly erroneous "if the district court's finding is plausible in light of the record as a whole." *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (internal quotation marks omitted). The district court's determination that a defendant's conduct creates a substantial risk of death or serious bodily injury is a legal conclusion that we review de novo. *Solis–Garcia*, 420 F.3d at 514.

Johnson argues that the district court erred in applying the reckless endangerment enhancement "because the government did not carry its burden to show that the enhancement applied." Particularly, Johnson urges that the district court's reliance on the photograph showing an alien partially inside the compartment was improper because the photographer "could not confirm that the photographs accurately represented how the aliens were originally found[, and thus] the photograph of the alien 'wedged in' a closet, could have been the

3

result of the aliens moving as the aliens were removed." For support, Johnson points to the report of the border patrol agent, who initially discovered the aliens, that states that all seven aliens were found lying on the floor covered with sleeping bags and other items.

The Government responds that the district court properly found that the photograph of "the alien 'wedged into' a small compartment with his head bent down" justified the enhancement and that any inconsistency between the photographer's testimony and the border patrol report was a credibility—not a reliability—issue for the district court to consider.

A district court may consider relevant information at sentencing, provided that the information has sufficient indicia of reliability. *United States v. Gaytan*, 74 F.3d 545, 558 (5th Cir. 1996). "The defendant bears the burden of demonstrating that the information relied upon by the district court in sentencing is materially untrue." *United States v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004).

Here, the border patrol agent's testimony concerning the standard procedure for photographing aliens shortly after discovery provided sufficient support for the district court to find that the photographs accurately depicted the positions of the aliens in the tractor. Accordingly, we conclude that the district court's findings that the aliens were "wedged into" the tractor and that one alien was "wedged into" the storage compartment were not clearly erroneous.

The question then is whether the district court erred by applying the reckless endangerment adjustment, given its factual findings. There is no single bright-line test that we apply in determining the applicability of the reckless endangerment enhancement. However, this court has developed a non-exhaustive list of five factors to consider when evaluating whether to apply the enhancement: "the availability of oxygen, exposure to temperature extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit

No. 09-40806

the vehicle quickly, and the danger to them if an accident occurs." *United States v. Zuniga–Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006).  Like here, where unrestrained aliens are transported within the passenger compartment of a vehicle, a single aggravating factor may be sufficient to warrant application of the reckless endangerment adjustment.  *United States v. Rodriguez–Mesa*, 443 F.3d 397, 403 (5th Cir. 2006) (per curiam); *see also United States v. Campos*, No. 08-41208, 2009 WL 3816969, at *1–2 (5th Cir. Nov. 16, 2009) (unpublished).  One such factor is the alien's inability to extract himself from the vehicle in necessary situations.  *Rodriguez–Mesa*, 443 F.3d at 403; *Campos*, 2009 WL 3816969, at *1.

In *Solis–Garcia*, we determined that a defendant who transported four aliens in the cargo area of a minivan, without seatbelts, did not create a substantial risk of death or serious bodily injury that justified application of the reckless endangerment enhancement.  420 F.3d at 516.  However, in *Rodriguez–Mesa*, we determined that a defendant who transported an alien in a contorted position inside a compartment between the front seats of a vehicle for at least an hour created a substantial risk of death or serious bodily injury that justified applying the enhancement. 443 F.3d at 403.  The alien in that case had his head and upper body tightly stuffed into the console between the vehicle's seats.  *Id.*  We distinguished *Solis–Garcia* on the ground that the alien would have difficulty extricating himself from the compartment.  *Id.*

Similarly, in *United States v. Garza*, 587 F.3d 304, 309 (5th Cir. 2009) (per curiam), the defendant transported aliens on the floorboards of an extended cab pickup truck, positioning the aliens partially underneath the back seat and wedged in between the front and back seats.  The district court found that the alien's ability to escape the vehicle in case of an accident was significantly limited and applied the reckless endangerment enhancement; we affirmed on those grounds. *Id.* at 309–10. And in *Campos*, we affirmed the application of the

reckless endangerment enhancement where an alien had hidden himself inside a closed bunk bed from which he could not have released himself.  2009 WL 3816969, at *2.

In *United States v. McKinley*, an alien was, similar to the present case, found inside a compartment in a tractor and another three aliens were found under a ten- to fifteen-pound mattress in the tractor.  272 F. App'x 412, 413 (5th Cir. 2008) (per curiam).  At sentencing, the defendant argued that the alien found in the compartment must have hidden himself there after the defendant had left the vehicle at the border patrol checkpoint.  *Id.*  The district court, while skeptical, assumed that the alien had not been in the compartment and concluded that all four aliens had been under the mattress.  *Id.* at 413 n.2.  Nevertheless, the district court applied the reckless endangerment enhancement, concluding that the aliens were at risk of suffocation under the mattress.  *Id.* at 413.  On appeal, we vacated and remanded for resentencing, determining that the mattress did not create a substantial risk of injury for the four adult male aliens.  *Id.*  We also noted that "[o]n the evidence presented, there were no extreme temperatures, the aliens could communicate freely with [the defendant], there were doors for relatively easy escape, there was normal airflow, and it was not more dangerous to lie in the sleeper compartment than it would have been to travel without a seatbelt."  *Id.* at 414.

Here, the district court's findings—which are not clearly erroneous—that seven aliens were wedged into the tractor and that one alien was wedged into the storage cabinet distinguish this case from *McKinley*.  Because the aliens were confined in close quarters and one alien was wedged into a small cabinet, we conclude that the aliens here would face significant difficulties in attempting to exit the vehicle, should such exit prove necessary.  *Cf. Garza*, 587 F.3d at 309–10 (aliens wedged in-between seats  significantly limited ability of aliens to escape); *Rodriguez–Mesa*, 443 F.3d at 403 (alien in compartment between seats

No. 09-40806

would have difficulty extricating himself from the vehicle); *Campos*, 2009 WL 3816969, at *2 (alien in closed bunk bed could not release himself).  Accordingly, the aliens here faced a substantial risk of serious harm, possibly death, and the district court did not err by applying the reckless endangerment enhancement in determining Johnson's sentence.

One motion remains outstanding on this appeal.  Johnson moved to expedite consideration of the appeal, given his impending release date.  Because we have decided this appeal, we deny Johnson's motion as moot.

## CONCLUSION

For the foregoing reasons, we AFFIRM Johnson's sentence, and we DENY the motion to expedite the appeal as moot.

SENTENCE AFFIRMED; MOTION DENIED AS MOOT.